**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LEVY RESTAURANT LIMITED PARTNERSHIP, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.  08 C 4745 |
| | ) | Judge Blanche M. Manning |
| HANS WILLIAMSON, | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

After working many years at Levy Restaurant Limited Partnership, defendant Hans R. Williamson left the company to work at the Yellowstone Club in Montana. Levy is now suing Williamson for alleged violations of a non-solicitation provision. Levy seeks, among other things, to recover payments made to Williamson pursuant to contingent compensation agreements known here as the Class B and Class D Equity Participation Awards. Williamson moves to dismiss the complaint. For the following reasons, the motion to dismiss [49-1] is denied in part and granted in part.

**I.    Facts**

The well-pleaded facts are taken as true for purposes of this motion to dismiss. Levy operates restaurants and provides food services at sports and entertainment facilities. Williamson was a high-level executive employed by Levy from November 17, 1994, to February 22, 2007. While Williamson was employed by Levy, Levy offered him a special form of contingent compensation called the Class B Equity Participation Award. The award, granted as of January 1, 2000, provided that Williamson would receive 300,000 Class B Units, which would become fully vested, subject to certain conditions, as of January 1, 2004, or in the event of a change in control.

The Class B Award also includes a non-competition/non-solicitation provision, contained in Section 7, under which Williamson could not, for a period of two years after termination of his employment, solicit or induce any employee of Levy to leave Levy's employment. Levy contends that any violation of the non-solicitation provision meant that Williamson forfeited the value of the award pursuant to additional language in Section 7, which states as follows:

> Employee acknowledges that violating any of the provisions of this Section 7 will result in irreparable injury to the Company and its Subsidiaries; accordingly, Employee agrees and acknowledges that a violation of this Section 7 shall result in forfeiture by the Employee of any and all rights to payments due or which may

otherwise become due to Employee under this Award.

Levy further alleges that on October 1, 2002, Williamson entered into another award agreement with Levy, which it refers to as the Class D Equity Participation Award. Williamson was issued an additional award of 100,000 Class D units pursuant to the terms of the Class D Award, which in relevant part required Williamson to adhere to the non-solicitation terms of his Employment Agreement. Section 8(a) of Williamson's Employment Agreement provided that for a period of three (3) years following his termination, he "shall not, directly or indirectly, without the written consent of the Company, knowingly solicit, entice or persuade any other employee of the Company or its affiliated or parent companies, to leave the service of the Company or such affiliated or parent company for any reason."

According to Levy, at the time of the issuance of the Class D award, it gave a presentation during which the recipients were told that they would "forfeit all rights" if they violated the non-competition or non-solicitation sections of their employment agreements. In support of this allegation, Levy attaches to its SAC PowerPoint slides that were purportedly used during the presentation.

Pursuant to the terms of the Class B Award, Levy paid Williamson $235,000 on or about April 15, 2006, due to a change of control at Levy. At or about the same time, and for the same reason, Williamson was issued an accelerated payment of $116,666.00 with regard to his 100,000 Class D units. Williamson resigned on February 27, 2007.

Levy alleges that after Williamson left Levy, he solicited other employees to leave Levy or otherwise interfered with their employment at Levy in violation of his Employment Agreement and the terms of the Class B and Class D Awards. Specifically, Levy alleges that Williamson induced Ryan Tawwater to leave Levy and join Williamson's new company, the Yellowstone Club. Tawwater ultimately left Levy on June 14, 2008, and shortly thereafter began working at the Yellowstone Club. Levy also alleges that Williamson solicited Jack Cruise, a regional manager of operations, to leave Levy and work at the Yellowstone Club. Finally, Levy alleges that Williamson also told Tawwater, via e-mail, to ask another Levy employee, Andrew Van Ermen, if "he want [sic] to move to MT [Montana]."

Thus, Levy has filed the instant lawsuit alleging breach of contract and seeking forfeiture of the approximately $350,000 paid to Williamson under the terms of the Class B and Class D Awards. Alternatively, it alleges a claim for equitable restitution.

## II.     Standard

Rule 12(b)(6) permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. To state such a claim, the complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

As noted by the Seventh Circuit:

> The Supreme Court has interpreted that language to impose two easy-to-clear hurdles. First, the complaint must describe the claim in sufficient detail to give the defendant "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007)*(quoting Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)) *(alteration in Bell Atlantic* ). Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level"; if it does not, the plaintiff pleads itself out of court. *Bell Atlantic*, 127 S.Ct. at 1965, 1973 n.14.

*E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). *See also Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618-19 (7th Cir. 2007) (observing that Supreme Court in *Bell Atlantic* "retooled federal pleading standards" such that a complaint must now contain "enough facts to state a claim to relief that is plausible on its face.").

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court accepts the allegations in the complaint as true, viewing all facts, as well as any inferences reasonably drawn therefrom, in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic,* 127 S.Ct. at 1964-65 (citations omitted).

### III. Analysis

#### A. Levy's Right to Seek Forfeiture of Class B and Class D Awards

In the SAC, Levy seeks forfeiture of the amounts paid to Williamson pursuant to the Class B and D Awards.[1] Williamson first argues that Levy does not have a right to forfeiture under the Class B Award based on this court's ruling on the motion to dismiss the First Amended Complaint. The terms of the Class B Award state that "payments due or otherwise become due" could be forfeited if Williamson breached the non-solicitation provision in the award. In its ruling on the first motion to dismiss, the court found that "payments due or otherwise become due" refers to payments that have not yet been made. Thus, to the extent that Levy was seeking to require Williamson to forfeit payments already made pursuant to the terms of the Class B Award, the court ruled that Levy could not do so. Williamson relies on this ruling to argue that Levy again cannot seek forfeiture of the Class B Award.

---

[1] In the First Amended Complaint, Levy only sought forfeiture of the amounts under the Class B Award.

As to the Class D Award, Williamson argues that Levy cannot seek forfeiture of the $116,666 it paid to him.  Specifically, Section 5 of the Class D Award provides in relevant part that "Units awarded under this Plan shall be deemed vested upon . . . a Change of Control . . . provided, however, that if a participant shall be dismissed from employment . . . for Cause . . . the participant shall have no right to receive any payments under this Plan from and after the effective time of such dismissal or termination, and all of his or her rights with respect to any and all Units held by the participant at the time of such termination or dismissal for Cause shall be immediately forfeited to [Levy] for no consideration."  According to Williamson, the plain language of the Class D Award states that he will only lose his right to receive any amounts "from and after the effective time of such dismissal or termination" and he may forfeit only those Units he holds "at the time of such termination or dismissal."  Thus, Williamson asserts that he cannot be required to forfeit payments already made to him pursuant to the Class D Award.

Levy, however, alleges that the interpretation of the language in the Awards is not up to Williamson or the court.  Specifically, Levy alleges in the SAC that the Class B and Class D Awards were made pursuant to the Levy Restaurant Equity Participation Plan, as amended from time to time.  Section 2 of the Plan, as attached to the Class B Award, is entitled "Administration" and states as follows:

> Section 2. <u>Administration</u>.  *The Plan shall be administered and interpreted by the Compensation Committee of the Advisory Committee of LRLP (the "Committee")*.  The Committee shall, subject to the terms of the Plan, make or refrain from making Awards (as defined below), determine the type and number of Units (as defined below) to be granted pursuant to such Awards, establish rules and regulations for the administration of the Plan, impose conditions with respect to competitive or other activities with respect to any such Awards, and establish the written form to be used to evidence such Awards.  *The Committee shall have the full authority to construe the terms and provisions of the Plan, to adopt, alter, waive and repeal such administrative rules, guidelines and practices governing this Plan and to perform all acts, including the delegation of its administrative responsibilities as it shall, from time to time, deem advisable, and to otherwise supervise the administration of this Plan.  All such rules, regulations and interpretations relating to the Plan which are adopted by the Committee shall be conclusive and binding on all parties*.  The Committee may correct any defect, supply any omission or reconcile any inconsistency in the Plan or in any Award granted hereunder, in the manner and to the extent it shall deem necessary to carry the Plan into effect.

SAC ¶ 29, citing the Amended and Restated Levy Restaurants Equity Participation Plan as of

January 1, 2000, § 2, attached as Exh. 1 to the SAC (emphasis added).[2]

Levy contends that "the Committee determined that Williamson's conduct materially breached the provisions of the [Class B and Class D] Awards barring solicitation or inducement of Levy's employees to leave Levy's employment," and "determined that when read as a whole in light of their purpose and intent, they required the return by Williamson of all payments that were payable following his payout event, i.e., the Change of Control." SAC ¶ 31. Levy goes on to state that the Committee's determination is subject to an arbitrary and capricious standard of review, *Firestone Tire & Rubber Co v. Bruch*, 489 U.S. 101 (1989), and because the Committee's decision was not arbitrary and capricious, the court should not overturn it.

According to Levy, the Class D Award conditions entitlement to payment on adherence to the non-solicitation terms of the Employment Agreement. Levy goes on to note that "[a]t the time of the issuance of the Class D Award and the 2002 Plan, Williamson and the other participants were informed in a PowerPoint presentation that they would 'forfeit all rights' if they violated the non-competition and non-solicitation provisions of their employment agreements." Although not entirely clear, it appears that Levy is asserting that because Williamson was notified through the PowerPoint presentation that forfeiture of the Class D Award was a possibility for violation of the non-solicitation provision, the Committee's interpretation requiring Williamson to forfeit the $166,666 he received under the Class D Award was not arbitrary and capricious.

Williamson argues that, although Section 2 was not expressly alleged in the First Amended Complaint, the Award documents were attached to the FAC and therefore the "court already considered that provision [that the Committee maintained the power to interpret and construe the Award plan] in making its ruling" on the first motion to dismiss. This is not correct. In ruling on the first motion to dismiss, the court considered the arguments before it, which did not include Levy's current assertion that it had the authority to interpret the terms of the Award. Simply because the Award and the Plan documents were attached to the First Amended Complaint does not mean that the court scoured it to ferret out arguments that may have been missed by Williamson in his motion to dismiss. It is not this court's role to act as an advocate for a party.

Williamson next argues that the court should reject Levy's contention that it exercised its power under Section 2 to decide that Williamson must forfeit his Awards because, according to Williamson, it is the court's role to construe the contract. Then, without citation to authority and without reference to the facts of this case, Williamson states that the "ERISA cases such as *Firestone Tire & Rubber Co v. Bruch*, 489 U.S. 101 (1989), which Levy relies on are

---

[2]The Levy Restaurants Equity Participation Plan–2002 as of October 1, 2002, which is attached to the Class D Award document, also contains the same "Administration" section. *See* Levy Restaurants Equity Participation Plan–2002 as of October 1, 2002, § 2, attached as Exh. 2 to the SAC.

inapposite." Williamson goes on to state that even if it is an ERISA plan, the Committee's interpretation was arbitrary and capricious.

Unfortunately, whether or not the Awards constitute ERISA plans has not been fully addressed by either party. While Levy states in a footnote that the Award is not an ERISA plan, *see* Response at 5, Williamson makes no attempt to establish one way or another whether the Award is an ERISA plan.[3] Because whether the Award is an ERISA plan may affect the resolution of Williamson's instant argument regarding the language of the Awards, and Williamson has chosen not to address the issue, the court will not either at this juncture. Because Williamson has forfeited the argument in the instant motion by failing to fully address the relevant issues, Williamson's motion to dismiss on this ground is denied.

C. Enforceability of the Covenants Not to Recruit

Williamson further contends that the non-solicitation provision is unenforceable as a matter of law. Williamson notes that Levy has alleged in its SAC that while it is based in Illinois, it has related partnerships in North Carolina and Spain and that its affiliated and parent companies are located in Spain, the United Kingdom and the Netherlands. In addition, Levy alleges in the SAC that it and its related limited partnerships employ over 15,000 employees at various locations throughout the United States. Based on these allegations, Williamson argues that the non-solicitation provision prohibiting him from soliciting any Levy employee, including those employed by Levy's subsidiaries, affiliates or parent companies for up to three years, is per se unreasonable and unenforceable.

Under Illinois law:

> Postemployment restrictive covenants operate as partial restrictions on trade, and as a result, Illinois courts carefully scrutinize them. A restrictive covenant may be held valid and enforceable if its terms are "'reasonable and necessary to protect a legitimate business interest of the employer.'" Whether a restrictive covenant is reasonable is a question of law. Factors for a court to consider include the hardship caused to the employee, the effect upon the general public, the geographic and temporal scope of the restrictions, as well as the activities

---

[3] Levy has filed a Motion for Leave to File a Limited Sur-reply [61-1], which this court grants. Williamson has also filed a response to the sur-reply, which the court took note of in its consideration of the matter. In its sur-reply, Levy notes that while Williamson challenges Levy's reliance on cases arising under ERISA when Levy itself asserted that the Awards were not subject to ERISA, Williamson failed to disclose that he had taken the position in his pleadings and discovery that ERISA does govern. This fact does not alter the court's conclusions with respect to this ground of the motion to dismiss but simply highlights the fact that whether the Awards are subject to ERISA is apparently a contested issue and should have been addressed more fully by the parties.

restricted, all of which necessarily turn on the facts of the case.

*Baird and Warner Residential Sales, Inc. v. Mazzone*, 893 N.E.2d 1010, 1014 (Ill. App. Ct. 2008)(internal citations omitted).

In response, Levy contends that because the equity awards contain "forfeiture for competition" clauses, they are scrutinized less carefully because they leave an employee free to compete or solicit. *Tatom v. Ameritech Corp.*, 305 F.3d 737, 744-45 (7th Cir. 2002); *Schlumberger Tech. Corp. v. Blaker*, 859 F.2d 512, 516 (7th Cir. 1988).

Williamson challenges Levy's authority on the ground that it is inapposite because it cites to cases arising under ERISA. As noted earlier, the parties have not fully briefed the issue of whether the Awards are governed by ERISA. Until the issue is properly presented to the court and resolved, the court declines to make any rulings that could be affected by its resolution of the issue, including the enforceability of the non-solicitation provision. Accordingly, the court denies Williamson's motion to dismiss on the ground that the non-solicitation provision is unenforceable.

D. Williamson's Alleged Unsuccessful Solicitations of Other Employees

Williamson next argues that Levy has failed to state a claim for breach of the non-solicitation covenant as to Cruise and Van Ermen because the SAC alleges that these two individuals never left Levy's employ. Thus, Williamson asserts, because they never left Levy, Levy has no damages with respect to any efforts by Williamson to recruit them and thus cannot state a claim for breach of the non-solicitation provision as to these two individuals.

Levy, responds, however, that it has alleged that Williamson's attempts to recruit Cruise disrupted Levy's relations with its senior level executives. Because Levy's allegations are sufficient to put Williamson on notice of the breach of contract claim and state a plausible claim for relief, Williamson's motion to dismiss the claim on the ground that it fails to allege damages is denied.[4]

E. Restitution

1. *Legal Restitution*

Williamson asserts that Levy's claim for "legal restitution" in Count I is simply a relabeling of the forfeiture claim that this court previously concluded was not available, and

---

[4] In addition, the court notes that Levy is also alternatively seeking rescission of the contract, which does not require a showing of damages but requires the party seeking rescission to return the parties to the status quo ante. *See Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l Ltd.*, 1 F.3d 639, 641 (7th Cir. 1993).

seeks to have it dismissed on that ground. However, for the reasons discussed in Section III.A. above, the court is not dismissing Levy's claim for forfeiture of the amounts paid to Williamson pursuant to the Class B and D Awards. Accordingly, the court denies Williamson's motion to dismiss the legal restitution claim.

2.  *Equitable Restitution*

As for the equitable restitution, Williamson contends that Levy cannot obtain equitable restitution because it is seeking to impose personal liability against him rather than attempting to impose a constructive trust or lien upon particular property in his possession. *Fregeau v. Life Ins. Co. of North Am.*, 490 F. Supp. 2d 928, 930 (N.D. Ill. 2007)("[F]or restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.")(citation and internal quotation marks omitted). Williamson also argues that the claim for equitable restitution should not be permitted where a binding contract is alleged.

Levy responds that the equitable restitution claim is another way of seeking unjust enrichment and the claim should be allowed to proceed. *See Fishman v. Zurich Am. Ins. Co.*, 539 F. Supp. 2d 1036, 1051-52 (N.D. Ill. 2008)(granting summary judgment on defendant's unjust enrichment counterclaim against employee who left defendant-company to work for competitor and was paid approximately $62,000 pursuant to the defendant's retirement plan where plan stated that "benefit payable . . . will be forfeited in the event an Employee obtains employment with . . . a competitor . . . .").

The court rejects Williamson's first argument that Levy cannot seek equitable restitution because it is attempting to impose personal liability on him. To the contrary, Levy is seeking to recover the funds it paid to Williamson. Moreover, as to Williamson's second argument, that a binding contract has already been alleged, a claim for equitable restitution may be pled in the alternative to a breach of contract claim. *See* Fed. R. Civ. P. 8(d)(2).

F.  <u>Rescission</u>

Williamson next asserts that Levy's rescission claim fails because the alleged breach does not go to the root of the contract. *See also Bucciarelli-Tieger v. Victory Records, Inc.*, 488 F. Supp. 2d 702, 712 (N.D. Ill. 2007)("Under . . . Illinois . . . law, rescission is generally granted only for fraud, mutual mistake or breaches of contract so material that they go to the very root of the contract.")(citations omitted).[5] Specifically, Williamson asserts that his services for Levy

---

[5]To the extent that Williamson argues that the rescission claim must be dismissed solely because Levy fails to allege that it is willing to reimburse Williamson for his services in order to return the parties to the status quo, the court disagrees and denies this basis for dismissal. In addition, to the extent that Williamson argues that Levy should not be permitted to rescind because it failed to do so promptly, the court will not consider this argument as it was raised for

provided consideration for the awards and because he substantially completed his service to Levy, the remedy of rescission is not appropriate. *Id.* at 713 n.4 (noting that "[n]umerous courts . . . have held that the underpayment of royalties (absent fraud or the total lack of payment) does not support the extreme remedy of rescission."). In a similar vein, Williamson asserts that "breach of an independent provision incidental to the main purpose of the contract and that does not go to the whole consideration does not justify cancellation of the contract." Motion at 14.

Levy disagrees, arguing that the terms of the two equity awards expressly provide that the non-competition and non-solicitation provisions are central to the agreements. For example, § 7 of the Class B Award provides that Williamson may not "solicit, for purposes of employment or affiliation in any business relationship, any individual actually in the employ of the Company . . . or induce any individual actually in the employ of the Company . . . to terminate such employment for purposes of becoming employed elsewhere." Levy goes on to assert that the awards were pursuant to phantom stock incentive plans separate from Williamson's Employment Agreement and that it was Williamson's promise "to loyally keep his interests aligned with the company's that formed the true consideration for the Awards." Response at 13.

Both parties rely on the language of the awards in support of their arguments. However, as noted earlier, the issue of exactly what types of contracts these are and whether they are governed by ERISA has not yet been fully briefed by the parties or resolved by the court. The court declines to interpret the language of the awards before making this crucial determination. Accordingly, the court denies Williamson's motion to dismiss the request for rescission.

### G. Attorney's Fees

Levy again seeks attorney's fees in its prayer for relief, which Williamson again moves to strike given that Levy points to no statute or contractual provision in support of its request. Levy contends it realleged its request for attorney's fees to preserve the issue for appeal. For the same reasons as stated in the court's order of December 18, 2008, Dkt. #29, Levy's request for attorney's fees is stricken.

### H. Prejudgment Interest

Williamson next asserts that Levy is not entitled to prejudgment interest because interest under the Illinois Interest Act, 815 ILCS 205/2, is only available when damages are a "fixed or easily calculated amount due from a debtor-creditor relationship." *Mutual Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 628 (7th Cir. 2001). According to Williamson, the written agreements between Levy and him did not create a debtor-creditor relationship and Levy's damages, if any, are not fixed or easily computed.

---

the first time in Williamson's reply. *Lorillard Tobacco Co. v. Elston Self Service Wholesale Groceries, Inc.*, 03 C 4753, 2009 WL 1635735, at *1 (N.D. Ill. Jun. 9, 2009)("Arguments raised for the first time in a reply brief may be considered waived")(citation omitted).

Levy asserts that a contractual obligation formed under a written instrument is sufficient to establish a debtor-creditor relationship and because it is seeking to recover the amount forfeited, which is fixed, it is entitled to prejudgment interest.

Due to the lack of factual detail available at this point in the litigation, the court declines to decide whether a debtor-creditor relationship existed or whether the amount that Levy seeks is fixed such that it is entitled to seek prejudgment interest. At this point, the court concludes that Levy's request for prejudgment interest constitutes a plausible prayer for relief. *Bell Atlantic*, 127 S.Ct. at 1965.

### I. Fed. R. Civ. P. 8

Williamson finally asserts that Levy's SAC violates the requirement under Rule 8 that a complaint include a "short and plain statement of the claim." Williamson asserts that the SAC includes Levy's interpretation of facts and attaches extrinsic evidence. After having considered the parties' arguments and carefully reviewing the SAC, the court concludes that the SAC is in compliance with Rule 8 and rejects this basis for dismissal.

## IV. Conclusion

For the above reasons, the motion to dismiss [49-1] is denied in part and granted in part.

**ENTER:**

Date: August 5, 2009

_____
**Blanche M. Manning**
**United States District Judge**